UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROCHELLE SYTSMA,

        Plaintiff,

v.

PHILLIPS 66 COMPANY,

        Defendant.

CASE NO. 2:20-CV-181-RAJ-DWC

REPORT AND RECOMMENDATION

Noting Date: July 30, 2021

The District Court referred this action to United States Magistrate Judge David W. Christel. Dkt. 7. Currently before the Court is Defendant Phillips 66 Company's Motion for Summary Judgment. Dkt. 21.

After reviewing the relevant record, the Court finds Plaintiff Rochelle Sytsma did not comply with Federal Rule of Civil Procedure 26(a) when disclosing her expert witnesses. The failure to comply with Rule 26(a) was not substantially justified or harmless. Even if Plaintiff had properly disclosed Charles A. Gargano, M.D., his testimony as to causation is unreliable. As such, Plaintiff has not provided a proposed expert to prove causation and, therefore, cannot prove

her case. Accordingly, the Court recommends Defendant's Motion for Summary Judgment (Dkt. 21) be granted and this case be closed.

## I.     Background

On February 10, 2017, at approximately 5:15 p.m., Plaintiff was driving South on Lake Terrell Road in Whatcom County, Washington. Dkt. 25, Sytsma Dec., ¶ 3. While she was driving adjacent to and past the Phillips 66 Ferndale Refinery ("Refinery"), Plaintiff noticed a strange odor and saw a cloud of vapor. *Id*. at ¶ 4. Plaintiff states she experienced a burning sensation in her lungs. *Id*. Plaintiff later learned from her husband, who works at the Refinery, that some time prior to 5:15 p.m. a hydrofluoric acid spill occurred at the Refinery. *Id*. at ¶ 3.

Later that same day, on February 10, 2017, Plaintiff was instructed by an emergency medical technician who worked for Defendant to go to the emergency department "immediately." *Id*. at ¶ 5. Plaintiff reported difficulty breathing, burning in her lungs, and wheezing. *Id*. at ¶ 6. Plaintiff states she was diagnosed with exacerbations of on-going medical issues due to exposure to a hazardous chemical, hydrofluoric acid. *Id*. at ¶ 7. Plaintiff's medical records state that the clinical impression was exposure to a hazardous chemical, but the doctor also had a "very low suspicion for any significant inhalational [of] hydrofluoric acid exposure in [Plaintiff]." Dkt. 22-2, p. 5. Plaintiff states burns started to appear on her skin and hair after going to the emergency department. Dkt. 25, Sytsma Dec., ¶ 7. Plaintiff sought treatment from Dr. Gargano for the next two years, in part, for medical issues related to the acid exposure. *Id*. at ¶ 11.

In the Complaint, Plaintiff asserts claims of negligence and strict liability. Dkt. 1-2. Defendant removed this action from the state court on February 5, 2020. Dkt. 1. On May 14, 2021, Defendant filed the Motion for Summary Judgment with supporting evidence. Dkt. 21- 22.

REPORT AND RECOMMENDATION - 2

1  Plaintiff filed her Response and supporting evidence on June 7, 2021 and, on June 11, 2021,
2  Defendant filed its Reply with additional evidence. Dkt. 24-27, 29-30.

3  **II.    Request for Oral Argument**

4  Defendant requested oral argument. Dkt. 21 (Motion caption). The Court has reviewed
5  the Motion, the Response, the Reply, and the relevant record and has determined oral argument
6  is unnecessary. Therefore, the Court recommends the request for oral argument be denied.

7  **III.   Discussion**

8  A.  *Legal Standard – Toxic Tort*

9  To survive summary judgment on a toxic tort claim, a plaintiff must prove general and
10 specific causation. *Golden v. CH2M Hill Hanford Grp., Inc.*, 528 F.3d 681, 683 (9th Cir. 2008);
11 *see Newkirk v. ConAgra Foods, Inc.*, 727 F.Supp.2d 1006, 1033-34 (E.D. Wash. 2010). General
12 causation has been defined by courts to mean whether the substance at issue had the capacity to
13 cause the harm alleged, while specific causation refers to whether a particular individual suffers
14 from a particular ailment as a result of exposure to a substance. *In re Hanford Nuclear*
15 *Reservation Litigation*, 292 F.3d 1124, 1133 (9th Cir. 2002). A plaintiff must establish both
16 general and specific causation. Thus, Plaintiff must establish not only that the toxic substance is
17 capable of causing the conditions complained of, but in addition, the toxic substance was the
18 cause-in-fact of her specific conditions. *Id.* at 1134; *see also, In re Berg Litigation*, 293 F.3d
19 1127, 1130 (9th Cir. 2002) (In order to establish causation, a plaintiff must show that the toxic
20 substance was both capable of causing his or her disease and that it in fact caused his or her
21 disease). In toxic tort cases involving airborne chemicals, expert testimony is required to
22 establish causation. *See Bruns v. PACCAR, Inc.*, 77 Wn. App. 201, 214-15 (1995) (noting expert
23 testimony is required to establish causation when an injury involves obscure medical factors that
24 would require an ordinary lay person to speculate in making a finding and concluding the toxic

reaction to airborne chemicals required expert medical testimony); *Whisnant v. United States*, 2006 WL 8442606, *2 (W.D. Wash. Oct. 24, 2006) (noting expert testimony is required to establish causation in toxic tort case); *Bolson v. Williams*, 181 Wash.App. 1016, *4-5 (2014).

B.  *Request to Exclude Expert Witnesses*

Defendant contends Plaintiff did not disclose an expert witness on the issue of causation within the time set in the pre-trial scheduling order. Dkt. 21. Defendant asserts that, because Plaintiff did not properly disclose her experts, the experts should be excluded. *Id*.

i.  Legal Standard

Rule 26 governs the disclosure of expert witnesses, which requires parties to disclose any person who they may call as an expert witness during trial. Fed. R. Civ. P. 26(a)(2)(A). If the expert witness was not specifically retained to provide expert testimony, the witness disclosure must state:

> (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
> (ii) a summary of the facts and opinions to which the witness is expected to testify.

*Id*. at (a)(2)(C). The court directs the timing and sequence of expert disclosures. *See id*. at (a)(2)(D).

Federal Rule of Civil Procedure 37(c) sets forth the consequences for failing to "provide information or identify a witness as required by Rule 26(a)." Fed. R. Civ. P. 37(c)(1). Pursuant to Rule 37(c)(1), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id*. "Among the factors that may properly guide a district court in determining whether a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the

REPORT AND RECOMMENDATION - 4

likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010). "Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness." *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106-07 (9th Cir. 2001).

      ii.   Plaintiff's Disclosures

Plaintiff's expert witness disclosure/reports deadline was May 4, 2021 and Defendant's expert witness disclosure/reports deadline was June 4, 2021. Dkt. 19. On May 4, 2021, Plaintiff served her Disclosure of Expert Witnesses – FRCP 26(a)(2) ("Expert Disclosure") on Defendant. Dkt. 22-3. The Expert Disclosure provided the names, addresses, phone numbers, and a brief description for eleven treating physicians. *Id*. Each brief description stated that the expert was one of Plaintiff's treating healthcare providers following the alleged incident, may have knowledge regarding Plaintiff's injuries and treatment, and any information regarding the expert's knowledge may be found within the medical records. *Id*.

On June 3, 2021, thirty days after Plaintiff's expert disclosure deadline and the day before Defendant's expert disclosure deadline, Plaintiff served on Defendant her "First Supplement of Plaintiff's Disclosure of Expert Witnesses – FRCP 26(a)(2)" ("Supplemental Expert Disclosure"). Dkt.27-1. The Supplemental Expert Disclosure names Charles A. Gargano and Jan Dank as expert witnesses. Dkt. 27-1. The Supplemental Expert Disclosure contains a statement regarding the facts and opinions as to which both Drs. Gargano and Dank are expected to testify. *Id*. Dr. Gargano was identified in the Expert Disclosure; Dr. Dank was not.[1]

---

[1] The eleven experts named in the Expert Disclosure were: Theresa Van der Vlugt, Charles A. Gargano, Omar A. Jaffer, Alison Beer, James B. Diestelhorst, Bruce C. Mackay, Stan C. Gilbert, Daniel J. Burdick, Various Providers at Mt. Baker Imaging/Northwest Radiologist, John Hatfield, and Bill Parsons.

        iii.   Analysis

Defendant states the Expert Disclosure and the Supplemental Expert Disclosure fail to comply with Rule 26(a) and the identified experts should be excluded. Dkt. 21, 29. However, even if the experts are not excluded, Defendant asserts the opinions fail to show causation sufficient to survive summary judgment. *Id*.

**Dr. Gargano:** Plaintiff identified Dr. Gargano as a non-retained expert witness in the Expert Disclosure. Plaintiff's identification of Dr. Gargano failed to include a summary of the facts and opinions on which he is expected to testify. Therefore, the Expert Disclosure does not meet the requirements of Rule 26(a). However, the Supplemental Expert Disclosure arguably corrected this error by including a statement summarizing the facts and opinions on which Dr. Gargano is expected to testify.

Plaintiff's counsel asserts the failure to comply with Rule 26(a) was substantially justified because he believed the disclosure was sufficient under the rules. *See* Dkt. 27, Shepherd Dec., ¶ 3. He also states any non-compliance was harmless because the error was corrected with the Supplemental Expert Disclosure.

First, Plaintiff's counsel states any failure to comply was substantially justified because he believed the disclosure was sufficient. Dkt. 24; Dkt. 27, Shepherd Dec., ¶ 3. He also states that the last case he tried in federal court was prior to the change to Rule 26(a)(2) in 2010. Dkt. 27, Shephard Dec., ¶ 5. Failure to disclose is "substantially justified" if it is "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The Court concludes a reasonable person could not find the Expert Disclosure was adequate. Rule 26(a)(2) clearly establishes what must be included in the disclosure -- the subject matter on which the witness is expected to present evidence and a summary of the facts and opinions to which the

witness is expected to testify. Furthermore, counsel has an obligation to be informed of both the Federal Rules and the local rules and failure to know the rules is not justification for failing to comply with the rules. Counsel has also entered an appearance in approximately ten cases in this Court since 2010. While he may not have tried a case, he has been involved in pretrial matters, including discovery, after the rule change in 2010. As such, the Court finds Plaintiff has not shown her failure to disclose was substantially justified.

Second, Plaintiff states any failure to disclose was cured when she provided the Supplemental Expert Disclosure. *See* Dkt. 24; *see also* Dkt. 27-1. "In determining whether a supplement under Rule 26(e) is appropriate, the court considers (1) whether the supplemental information correspond[s] to a prior Rule 26(a) disclosure and, if so, (2) whether the supplemental information [was] available at the time set for the initial disclosure." *Ibekwe v. White*, 2016 WL 6963051, at *4 (C.D. Cal. Feb. 23, 2016) (citing *Burger v. Excel Contractors, Inc.*, 2013 WL 5781724, at *3 (D. Nev. Oct. 25, 2013)). "Supplementing an expert report pursuant to Rule 26(e) means correcting inaccuracies or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Sherwin–Williams Co. v. JB Collision Servs., Inc.*, 2015 WL 1119406, at *6 (S.D. Cal. Mar. 11, 2015) (internal quotations omitted). "[S]upplementation does not cover failures of omission because the expert did an inadequate or incomplete preparation[.] To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would wreak havoc in docket control and amount to unlimited expert opinion preparation." *Id.* (internal citation and quotation marks omitted).

Rule 26(a) clearly establishes what information must be included in expert disclosures. Dr. Gargano's summary of the facts and his opinions could have been provided in the May 4,

REPORT AND RECOMMENDATION - 7

1  2021 Expert Disclosure. In fact, the last treatment note Dr. Gargano relies on in forming his
2  opinion was dated November of 2019, approximately a year and a half prior to his opinion. *See*
3  Dkt. 26, Gargano Dec., ¶ 14. Rather, by disclosing Dr. Gargano's opinions on June 3, 2021, it
4  appears Plaintiff is attempting to provide an untimely causation expert after Defendant's Motion
5  for Summary Judgment was filed. As the Supplemental Expert Disclosure does not seek to
6  correct an inaccuracy or supplement a previous report with new information, the Supplemental
7  Expert Disclosure is not proper.
8        In sum, Plaintiff did not comply with Rule 26(a) when disclosing Dr. Gargano as an
9  expert and the Supplemental Expert Disclosure is not proper. Therefore, Plaintiff has not shown
10 her failure to comply with Rule 26(a) was substantially justified or harmless. Accordingly, Dr.
11 Gargano should be excluded from providing his opinion.
12       **Dr. Dank:** Plaintiff did not identify Dr. Dank as in expert in the Expert Disclosure.
13 Plaintiff then identified Dr. Dank in the Supplemental Expert Disclosure. *See* Dkt. 27-1. As
14 discussed above, the Supplemental Expert Disclosure was not proper. Importantly, a new expert
15 cannot be disclosed in a supplemental disclosure. *See Martinez v. Costco Wholsesale Corp.*, 336
16 F.R.D. 183, 186–87 (S.D. Cal. 2020). Furthermore, all information in the Supplemental Expert
17 Disclosure was available to Plaintiff and Dr. Dank on May 4, 2021 because Dr. Dank based her
18 opinion on her treatment of Plaintiff in 2017. Dkt. 27-1, p. 5. Plaintiff has provided no
19 explanation for failing to timely disclose Dr. Dank in the Expert Disclosure. As Plaintiff did not
20 timely disclose Dr. Dank and has provided no explanation for the failure to timely disclose Dr.
21 Dank, the Court finds Dr. Dank should be precluded from providing her opinion.
22       **Remaining Experts:** As stated above, the Expert Disclosure fails to include a summary
23 of the facts and opinions on which each witness is expected to testify. Therefore, the Court finds
24

the Expert Disclosure does not meet the requirements of Rule 26(a) as to any identified expert. Moreover, in the improper Supplemental Expert Disclosure, Plaintiff did not provide any additional information regarding the ten remaining experts named in the Expert Disclosure. *See* Dkt. 27-1. Defendant should not be required to guess as to the testimony of each of these experts or expend time and money developing these experts' opinions or retaining rebuttal experts. As Plaintiff failed to comply with Rule 26(a) when disclosing the remaining experts (Theresa Van der Vlugt, Omar A. Jaffer, Alison Beer, James B. Diestelhorst, Bruce C. Mackay, Stan C. Gilbert, Daniel J. Burdick, Various Providers at Mt. Baker Imaging/Northwest Radiologist, John Hatfield, and Bill Parsons), the Court finds these ten experts should be excluded.

        iv.  Conclusion

For the above stated reasons, the Court finds Plaintiff failed to comply with Rule 26(a). The Court also finds the Supplemental Expert Disclosure is not proper. Plaintiff has not shown her failure to comply was substantially justified or harmless. Therefore, the failure to comply with Rule 26 warrants excluding all identified experts from providing their opinion in support of any motion, hearing, or at trial. As a result, Plaintiff has failed to identify any proposed expert testimony regarding causation and cannot prove her case. Thus, summary judgment for Defendant is appropriate. *See Carrera v. Pac. Gas & Elec. Co.*, 821 F. App'x 813, 814 (9th Cir. 2020) (finding "[t]he district court did not abuse its discretion by ruling that plaintiffs failed to submit expert testimony on causation because they failed to disclose any expert witnesses in their Federal Rule of Civil Procedure 26(a)(2) expert disclosures").[2]

---

[2] The Court notes Plaintiff was required to disclose expert witnesses on May 4, 2021. Plaintiff did not request an extension of time to disclose experts or to conduct additional discovery. Plaintiff cannot now attempt to add an expert witness. And, if she attempted to disclose a proposed causation expert at this time, the proper remedy would be exclusion of that witness. *See Yeti*, 259 F.3d at 1106.

C. *Daubert Exclusion*

Defendant asserts that, if Plaintiff's identified expert witnesses are not excluded for Plaintiff's failure to comply with Rule 26(a), Defendant is still entitled to summary judgment because Plaintiff's expert witnesses fail to prove causation. *See* Dkt. 29. While the Court finds Plaintiff has not properly disclosed an expert witness who can testify as to causation, the Court notes Dr. Gargano submitted a declaration, included in the Supplemental Expert Disclosure, which is arguably related to proving causation. Thus, in an abundance of caution, the Court will consider whether Dr. Gargano's opinion is sufficient to meet the causation requirements of this case.

i. Legal Standard

An expert opinion is admissible pursuant to Federal Rule of Evidence 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993), the Supreme Court charged trial judges with the responsibility of acting as gatekeepers to prevent unreliable expert testimony from reaching the jury. The gate-keeping function applies to all expert testimony, not just testimony based on science. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). To be admissible, expert testimony must be "not only relevant, but reliable." *Daubert*, 509 U.S. at 589. The reliability of expert testimony is judged not on the substance of the opinions offered, but on the methods employed in developing those opinions. *Id*. at 594–95. In general, the expert's opinion must be based on principles, techniques, or theories that are generally accepted in his or

her profession and must reflect something more than subjective belief and/or unsupported speculation. *Id.* at 590. The testimony must also be "helpful," such that a valid connection between the opinion offered and the issues of the case exists. *Id.* at 591–92.

          ii. Dr. Gargano's Opinion

Dr. Gargano submitted a declaration stating the following: Plaintiff contacted Dr. Gargano's office on February 16, 2017, complaining of a "sore throat, wheezing, hoarseness in her voice and 'feeling awful' after an exposure to a hydrofluoric acid spill" at the Refinery. Dkt. 26, Gargano Dec., ¶ 5. Dr. Gargano treated Plaintiff on February 20, 2017. *Id.* at ¶ 6. Plaintiff reported that she noticed burning in her lungs and on her skin as she drove by the Refinery. *Id.* Dr. Gargano noticed visible burns on Plaintiff's skin on the back of her neck and on her left arm; he also noticed her hair looked dry. *Id.* at ¶ 7. Dr. Gargano extended Plaintiff's prednisone taper because Plaintiff has underlying pulmonary issues. *Id.* He also advised her to use hydrocortisone ointment on her skin and vitamin A and D ointment. *Id.*

On May 5, 2017, Plaintiff was treated by Radu Ivan, an advanced registered nurse practitioner ("ANRP") in Dr. Gargano's office. Dkt. 26, Gargano Dec. ¶ 9. Plaintiff complained of tightness and pain in her substernal region. *Id.* Plaintiff was diagnosed with postural dizziness with near syncope, heart palpitations, and substernal chest pain. *Id.* Dr. Gargano treated Plaintiff on May 22, 2017 for a follow-up. *Id.* at ¶ 10. He noted the etiology for her pain was unclear and a potential cause could be the toxic gas exposure on February 10, 2017. *Id.*

Dr. Gargano also stated that Plaintiff was treated by Bruce Mackay, M.D. on April 16, 2018 for tingling and numbness in her extremities. *Id.* at ¶ 11. Dr. Gargano noted that Dr. Mackay opined Plaintiff's neuropathy was likely nutritional, although he was uncertain of the toxic effects of hydrofluoric acid exposure. *Id.* Plaintiff was treated by Omar Jaffer, M.D., on

January 31, 2019. *Id*. at ¶ 12. Dr. Gargano understood Dr. Jaffer noted Plaintiff's eosinophilic bronchitis and associated symptoms worsened in 2017 following the exposure to the hydrofluoric acid. *Id*. "Dr. Jaffer noted a chest CT scan may be appropriate if there was any drop in lung function, to evaluate for bronchiectasis, given the acid exposure." *Id*.

Plaintiff was treated again by ARNP Ivan on September 30, 2019. Dkt. 26, Gargano Dec., ¶ 13. ARNP Ivan noted Plaintiff had an increased risk of lung disease due to the acid exposure. *Id*. On November 11, 2019, Dr. Gargano treated Plaintiff for multiple issues, including persisting symptoms from the acid exposure. *Id*. at ¶ 14. He "indicated the burning of [Plaintiff's] skin lasted for two years following the acid exposure" and "her breathing had improved with time." *Id*.

Dr. Gargano stated that, overall, his office treated Plaintiff six times over two years for injuries and exacerbations resulting from her exposure to Defendant's hydrofluoric acid spill. Dkt. 26, Gargano Dec., ¶ 15. Dr. Gargano opined Plaintiff sustained chemical burns to her skin and hair and an acute exacerbation of her eosinophilic bronchitis. *Id*. And, despite normal spirometry tests, Plaintiff "had persistent symptoms that were consistent following the acid exposure." *Id*. at ¶ 16. Dr. Gargano opined that "[o]n a more probable than not basis, with a reasonable degree of medical certainty, [Plaintiff's] burns to her skin and hair, and exacerbation of her eosinophilic bronchitis were related to the February 10, 2017, acid exposure." *Id*. at ¶ 16.

Dr. Gargano provided no information as to general causation. He did not identify the level of hydrofluoric acid vapor a person must be exposed to for it reach toxic levels. He did not cite to any sources to support his finding that exposure to hydrofluoric acid vapor may cause burns to skin and hair and exacerbation of eosinophilic bronchitis. Dr. Gargano failed to explain precisely how he reached his conclusion and cites to no objective source to show he followed a

REPORT AND RECOMMENDATION - 12

scientific evidence method. *See Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1056 (9th Cir. 2003) (internal quotation omitted) ("Where peer review and publication are absent, the experts must explain precisely how they went about reaching their conclusions and point to some objective source—a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like—to show that they have followed the scientific evidence method, as it is practiced by (at least) a recognized minority of scientists in their field."). As Dr. Gargano provided no information related to exposure to hydrofluoric acid vapors or his knowledge about such exposures, the Court finds Dr. Gargano's opinion is silent as to general causation.[3]

Moreover, Dr. Gargano's opinion regarding specific causation does not meet *Daubert*'s reliability standard. It appears Dr. Gargano attempted to perform a differential diagnosis to reach his conclusion that Plaintiff's exposure to hydrofluoric acid vapor did in fact cause her injuries. A differential diagnosis is a systematic comparing and contrasting of clinical findings to determine which of two or more diseases with similar symptoms is the one in which the patient is suffering. *Clausen*, 339 F.3d at 1057. This "generally is accomplished by determining the possible causes for the patient's symptoms and then eliminating each of these potential causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely." *Id*. The expert first creates a comprehensive list of all possible causes of the patient's symptoms and then begins a process of elimination based on a continued review of the

---

[3] The Court notes it found Dr. Dank should be excluded from presenting her opinions. Dr. Dank's summary statement indicates she would testify that she treated Plaintiff for chemical burns on February 23, 2017 as a result of Plaintiff's exposure to hydrofluoric acid. Dkt. 27-1, p. 5. Dr. Dank's proposed testimony is silent as to general causation. *Id*. Similar to Dr. Gargano, Dr. Dank does not identify the level of exposure to hydrofluoric acid that is toxic nor does she cite to any sources to support her finding that exposure to hydrofluoric acid vapor may cause burns to skin or that Plaintiff was exposed to that level of hydrofluoric acid. Therefore, even if the Court were to allow Dr. Dank's opinion, the testimony is not sufficient to show general causation. Importantly, this evidence was not submitted as evidence in response to the Motion for Summary Judgment.

evidence. *See Dominique v. Holland America Line, N.V.*, 2013 WL 5437436, at *3 (W.D. Wash. Sept. 27, 2013). The expert must provide reasons for rejecting possible causes using scientific methods and "the elimination of those hypotheses must be founded on more than 'subjective beliefs or unsupported speculation.'" *Clausen*, 339 F.3d at 1058 (quoting *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994)).

Here, as discussed above, Dr. Gargano did not rely on any independent research or specific studies to support his conclusion that Plaintiff was exposed to toxic amounts of hydrofluoric acid vapor and that this exposure did in fact cause her symptoms. His opinion also fails to show whether or how he used differential diagnosis to reach his ultimate conclusion. Rather, Dr. Gargano's opinion outlined Plaintiff's treatment, wherein he noted the cause and etiology of Plaintiff's symptoms was unclear. *See* Dkt. 26, Gargano Dec., ¶ 10 (May of 2017 there were multiple potential causes for Plaintiff's pain and the etiology of Plaintiff's symptoms was unclear), ¶ 11 (Plaintiff's tingling and numbness in her extremities was likely due to B-12 deficiencies in 2018), ¶ 12 (eosinophilic bronchitis and associated symptoms worsened in 2017 following "the exposure"). Then, on May 21, 2021, without explanation, Dr. Gargano opined Plaintiff's burns to her skin and hair and eosinophilic bronchitis exacerbation (lasting at least two years) were related to the February 10, 2017 hydrofluoric acid vapor exposure. *Id*. at ¶ 16. There is no indication in his opinion that he considered any other source and eliminated that source as the cause of Plaintiff's symptoms. Therefore, the Court finds Dr. Gargano's unsupported conclusion that Plaintiff's symptoms were caused by exposure to hydrofluoric acid vapor on February 17, 2017 lacks sufficient substantive analysis to be considered reliable under *Daubert*. *Clausen*, 339 F.3d at 1058 ("expert testimony that neglects to consider a hypothesis that might explain the clinical findings under consideration may also be unreliable"); *Westberry v. Gislaved*

*Gummi AB,* 178 F.3d 257, 265 (4th Cir. 1999) ("A differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation.").

Dr. Gargano's opinion is silent as to general causation and unreliable as to specific causation. Therefore, the Court finds Dr. Gargano's opinion as to causation should be excluded.

D. *Summary Judgment*

Defendant seeks summary judgment asserting Plaintiff has failed to provide expert testimony as to causation and, therefore, cannot prove her case. Dkt. 21, 29.

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Plaintiff must prove both general and specific causation. Therefore, failure to identify a witness who can provide admissible evidence related to either causation prong warrants dismissal. Plaintiff has failed provide an expert who can testify to general causation. Moreover, the Court has excluded any expert identified who would testify as to specific causation. As such, Plaintiff has failed to provide sufficient admissible evidence to meet the burden of proof in this toxic tort case. *See Avila v. Willits Environmental Remediation Trust*, 633 F.3d 828, 838-39 (9th Cir. 2011). Accordingly, the Court finds summary judgment for Defendant is proper.

## IV.  Conclusion

For the above state reasons, the Court finds Plaintiff has not identified an admissible causation expert witness in this case. As the Court finds Plaintiff's proposed causation witnesses should be excluded, the Court recommends granting Defendant's Motion for Summary Judgment (Dkt. 21) and closing this case.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on July 30, 2021, as noted in the caption.

Dated this 14th day of July, 2021.

David W. Christel
United States Magistrate Judge